UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RICHARD KELLY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:22-cv-01256-TWP-MJD |
| | ) |
| KATE WILKS, CENTURION HEALTH OF | ) |
| INDIANA, LLC, INDIANA DEPARTMENT OF | ) |
| CORRECTION, KRISTEN DAUS, KELLY | ) |
| WILLIAMS, JASON CARTER, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed Defendants Kate Wilks ("Dr. Wilks"), Centurion of Indiana, LLC ("Centurion"), Kelly Williams ("NP Williams"), and Jason Carter ("Dr. Carter") (collectively, the "Medical Defendants") (Dkt. 42). Plaintiff Richard Kelly ("Kelly") challenges the medical care he has received while incarcerated at New Castle Correctional Facility ("NCCF"). Among other things, Kelly contends that defendants Dr. Carter and NP Williams exhibited deliberate indifference to his complaints of pain in violation of his Eighth Amendment rights; and defendant Centurion maintained policies which precluded proper treatment for his cataract and sufficient medication. The Medical Defendants raised the affirmative defense that Kelly failed to exhaust his available administrative remedies before filing this lawsuit. For the reasons below, summary judgment is **granted in part and denied in part.**

I. **STANDARD OF REVIEW**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is

no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

## II.     FACTUAL BACKGROUND

Because the Medical Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to Kelly, the non-moving party

and draw[s] all reasonable inferences in his favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

A.  **Kelly's Claims**

Kelly suffers from several serious medical conditions, including neurological damage, degenerative bone and disc disease, muscular dystrophy, and chest pain. He also has a cataract in one of his eyes. On numerous occasions throughout 2022, both Dr. Carter and NP Williams "repeatedly refused to treat Plaintiff's pain per…specialists['] prescriptions" and Dr. Carter "refuses to even see Plaintiff for sick-call appointments." (Dkt. 25 at 13.) Centurion maintains a "one good eye" policy that precluded treatment for his cataract and a policy of failing to maintain an appropriate amount of pill stock on hand. *See* Dkt. 29 at 2-3.

B.  **The Grievance Process**

The Indiana Department of Correction ("IDOC") maintains an Offender Grievance Process, which is in place at NCCF. *See* Dkt. 43-1 at 2 ¶ 6. The purpose of the Grievance Process "is to provide a process where offenders … may resolve concerns and complaints relating to their conditions of confinement." *Id.* at 10. The Grievance Process consists of three steps: 1) a formal attempt to solve a problem at the institutional level; 2) a written appeal to the Warden/Designee; and 3) a written appeal to the Department Offender Grievance Manager. *Id.* at 2 ¶ 6, 12. If the inmate does not receive a receipt or a rejected form from the Offender Grievance Manager within ten days of submitting his formal grievance, the Grievance Process directs him to notify the Grievance Manager of that fact and the Offender Grievance Manager shall investigate the matter and respond to the offender's notification within ten business days. *Id.* at 18.

C.  **Kelly's Grievances**

Kelly filed the following grievances during the time at issue:

On November 21, 2019, Kelly submitted a grievance complaining that he was seen by a nurse who claimed the provider wanted to know what medications he was taking. (Dkt. 43-1 at 44.) Kelly wrote that he tried to discuss the matter with the nurse who then determined he was refusing treatment. *Id*. The grievance was denied. Kelly submitted all appeals as required by the Grievance Process. *Id.*

On January 27, 2022, Kelly submitted a grievance complaining that an emergency room physician at St. Vincent Hospital of Anderson had ordered prescription medication for a heart condition and related chest pain and that nursing staff at the facility refused to provide him with the medication. *Id.* at 48. The grievance was denied on February 23, 2022. *Id*. at 46. Kelly indicated he disagreed with the response and requested an appeal form, which was sent to him on March 7, 2022. *Id*. However, Kelly did not complete or submit an appeal. *Id*. at 4 ¶ 12.

On March 4, 2022, Kelly submitted Grievance No. 139265, complaining that Dr. Wilks told him that medical providers are instructed not to treat his complaints of pain as a matter of practice. (Dkt. 43-1 at 58.) The grievance was denied on April 1, 2022. *Id*. at 56. Kelly submitted all required appeals of this grievance. *Id.* at 53-54.

Also on March 4, 2022, Kelly submitted Grievance No. 139266, complaining that Dr. Wilks and Nurse Practitioner Dianna Johnson ("NP Johnson") together decided to discontinue his prescription for Tramadol and that Dr. Wilks implemented a policy of refusing to treat severe pain during emergency situations. The grievance was denied, and there is no record of Kelly appealing this denial. Kelly asserts that he did file appeals of this grievance. (Dkt. 46 at 4.)

On March 15, 2022, Kelly submitted Grievance No. 139811 complaining that he had submitted four Health Care Request Forms seeking an appointment with an eye doctor, sick call, chronic care, and renewal of an expired prescription. (Dkt. 43-1 at 69.) Kelly sought immediate

4

scheduling of at least two nurse sick calls and one appointment with an eye doctor. *Id*. The grievance was denied on April 11, 2022. *Id*. at 67. Kelly submitted all required appeals. *Id.* at 64.

On April 20, 2022, Kelly submitted a grievance complaining that he saw NP Johnson for sick call on April 15, 2022 and requested medication for chronic pain. (Dkt. 43-1 at 79.) According to Kelly, NP Johnson advised him she would prescribe Tramadol, but as of April 20, 2022, the prescription had yet to be administered. *Id*. The grievance was denied on May 26, 2022, with the explanation that the medication had not been approved. *Id.* at 77. Kelly submitted all required appeals of this grievance. *Id*. at 73.

### III. DISCUSSION[1]

The Medical Defendants acknowledge that Kelly fully grieved his claim against regarding Dr. Wilks, telling him during a provider visit on March 1, 2022, that medical providers are instructed not to treat his complaints of pain as a matter of policy. (Dkt. 43-1, ¶ 14) However, they argue the designated evidence establishes that Kelly failed to fully grieve his independent complaints regarding Ms. Williams, Dr. Carter, or Centurion's purported "one-good-eye" policy and policy of maintaining insufficient amounts of medication "in stock." The Court will address the contested claims in turn.

### A. Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust all available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some

---

[1] While Kelly has filed a surreply, (Dkt. 49), that filing does not comply with the requirement of Local Rule 56-1 that a surreply may be filed only when the moving party cites new evidence in its reply or objects to the admissibility of the evidence in the response. Accordingly, the surreply has not been considered.

other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). "To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (*citing Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

While the exhaustion requirement is strict, it "hinges on the availability of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016) (internal quotation omitted). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Id.* Thus, "exhaustion is not required when the prison officials responsible for providing grievance forms refuse to give a prisoner the forms necessary to file an administrative grievance." *Hill v. Snyder,* 817 F.3d 1037, 1041 (7th Cir. 2016).

"Because exhaustion is an affirmative defense," the defendants face the burden of establishing that "an administrative remedy was available and that [Plaintiff] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id*. (internal quotation omitted). "[A] prisoner need not exhaust 'where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint.'" *Dowaun v. Wexford Health Sources, Inc.*, No. 21-2957, 2023 WL 5348345, at *2 (7th Cir. Aug. 21, 2023) (quoting *Booth v. Churner*, 532 U.S. 731, 736 (2001)).

6

B. **Kelly's Use of the Grievance Process**

In support of their summary judgment motion, the Medical Defendants argue that Kelly never grieved his claims against them. As explained below, Kelly has shown that he did exhaust his claim that the *individual* Medical Defendants failed to treat his pain. But he has failed to raise a genuine issue of material fact regarding whether he exhausted his policy claims against defendant Centurion.

1. **Pain Treatment**

Kelly argues that he did exhaust the issue of being refused treatment for his pain with his March 4, 2022, Grievance No. 139265.[2] He complained as follows in that grievance:

> On 3-1-22, while I was housed in the infirmary, Dr. Kay Wilks came to see me, "she came from Indianapolis." She is RMD for Centurion Corr. Services.
>
> During our conversation I explained that I had been to the NCCF E.R. nine times for severe chest pain and that none of the on-call healthcare providers treated my pain symptoms.
>
> Ms. Wilks informed me that the reason they will not treat said suffering is because they are instructed not to do so.
>
> ….
>
> Now I just found out about this "practice" on 3-1-22 and our conversation constituted the informal portion of this grievance issue.
>
> Dr. Wilks is the boss of said on-call healthcare providers, so they are all acting together, and I have suffered as a result.

Dkt. 43-1 at 58.

The Medical Defendants argue that this grievance was not sufficient to grieve any general claims about the denial of pain treatment against any provider other than Dr. Wilks and point out that Dr. Wilks does not seek summary judgment on the exhaustion defense. The Medical

---

[2] Mr. Kelly refers to this as Grievance No. 139266, but it appears he intended to refer to No. 139265, which addressed his complaints of pain and was fully exhausted.

Defendants further contend that even if this grievance is sufficient to exhaust his claims against NP Williams for not providing him adequate pain treatment, such claim is superfluous of the claim against Dr. Wilks and therefore subject to dismissal. Finally, they argue that this grievance is not sufficient to grieve Kelly's policy claims against Centurion.

A review of the undisputed facts reveals that, with Grievance No. 139265, Kelly fully exhausted his claims that the individual Medical Defendants failed to treat his pain. First, this grievance refers to "on-call healthcare providers," asserting that these providers acted together with Dr. Wilks to deny him pain treatment. It was therefore enough to put the Medical Defendants on notice of Kelly's complaints about his pain treatment. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) ("Maddox's grievance served its function by providing prison officials a fair opportunity to address his complaint."). Further, to the extent that the Medical Defendants argue that Kelly's claims about pain treatment other than his claim against Dr. Wilks are superfluous, they point to no authority to support a conclusion that this is a sufficient reason to dismiss his claims against the Medical Defendants other than Dr. Wilks.

On the other hand, Grievance No. 139265 does not address Kelly's claims that Centurion maintains a "one good eye" policy and has a practice of failing to keep enough medication on hand. The grievance simply states that providers are instructed not to treat his pain, not that there is not enough medication to do so. This is not enough to put Centurion on notice of Kelly's concerns.

Because the evidence before the Court shows that Kelly fully exhausted his claim that he was denied necessary pain treatment, defendants Dr. Carter and NP Williams are not entitled to summary judgment. However, the Medical Defendants have shown that Grievance No. 139265 does not provide notice of the claims alleged against Centurion. Kelly fully exhausted his March 15, 2022, grievance in which he requested to see an eye doctor. (Dkt. 43-1 at 71.) But Kelly's

8

grievance that he cannot see out of one eye does not assert that Centurion maintains a policy of not providing treatment when a patient has one good eye and therefore is not enough to put Centurion on notice of this claim.

The Court now turns to Kelly's arguments in support of his position that he should be excused from exhausting the claims alleged against Centurion.

### 2. Claims Against Centurion

Kelly generally admits that he did not exhaust the Grievance Process on his claims against Centurion. But he argues that he did not need to because he filed Tort Claim notices and because Centurion is a contractor of IDOC.

First, even if Kelly did file notices under Indiana's Tort Claims Act, this is not sufficient to exhaust his administrative remedies as required by the PLRA. *See Norris v. Cohn,* 27 F. App'x 658, 660-61 (7th Cir. 2001) (filing a Notice of Tort Claim with the Indiana Attorney General does not satisfy the PLRA).

In addition, Kelly argues that, because he filed a Tort Claim notice regarding his allegations, he was not required to exhaust the Offender Grievance Process and, indeed, could not have. (Dkt. 46 at 1-2.) This argument is based on the following provision of the Grievance Process:

> Examples of non-grievable issues, but not limited to:
> 1. Federal, State, and local law;
> ….
> 12. Tort Claims seeking monetary compensation.

(Dkt. 46 at 2 (citing Dkt. 43-1 at 13).)

But exclusion of Tort Claims in the Grievance Process did not relieve Kelly of his responsibility to grieve his claims in this case. Instead, the inclusion of tort claims as a non-grievable issue refers to claims filed under the Indiana Tort Claims Act, not to the § 1983 claims

9

raised in this case. *See Ogle v. Brown*, No. 2:16-CV-00083-LJM-DKL, 2016 WL 6163462, at *1 (S.D. Ind. Oct. 24, 2016) ("A tort claim is not required before filing a § 1983 action, but under the PLRA, complying with the prison's grievance policy is."). *Hall v. Lunsford*, No. 1:17-CV-02945-SEB-MPB, 2019 WL 1077600, at *5 (S.D. Ind. Mar. 6, 2019) (reference in the policy to "Tort Claims" confirms that "Tort Claims" means "claims submitted under the [Indiana Tort Claims Act]," not "complaints about conduct which may have been tortious."); *Payton v. Talbot*, No. 1:18-CV-03858-JRS-DLP, 2019 WL 5965236, at *4 (S.D. Ind. Nov. 13, 2019); *Cantroll v. Morris*, 849 N.E.2d 488, 506 (Ind. 2006) ("[T]he [Indiana Tort Claims Act] does not apply to claims based on 42 U.S.C. § 1983."). The "Jurisdiction Statement" of Kelly's Amended Complaint makes clear that his claims were brought under § 1983, not Indiana state law:

> This cause of action is filed by plaintiff alleging violations of his civil rights under: 29 U.S.C. § 791 et seq.; 42 U.S.C. 1983; 42 U.S.C. 1997(e)(e); 42 U.S.C. 12181(7)(F); 42 U.S.C. 12182(A); 42 U.S.C. 12132; 42 U.S.C. 1985.
>
> Pursuant to 29 U.S.C. 791 et seq., Rehabilitation Act of 1973 (R.A.), the court has jurisdiction over this case.

Dkt. 25 at 4.

Kelly goes on to argue that no administrative remedies were available against Centurion because it is an outside contractor and not part of IDOC. But the Grievance Process specifically identifies acts of contractors as appropriate to the grievance process as it lists "[a]ny other concerns relating to conditions of care or supervision within the Department, *or its contractors*, except as noted in this policy and administrative procedure" as matters that can be grieved. (Dkt. 43-1 at 12) (emphasis added). The Medical Defendants have thereby shown that Kelly was required to exhaust his claims against Centurion.

Because it is undisputed that Kelly did not exhaust his available administrative remedies as to his claims against Centurion, Centurion is entitled to summary judgment.

### IV.   CONCLUSION

For the reasons explained above, the Motion for Summary Judgment filed by Dr. Wilks, Centurion, NP Williams, and Dr. Carter, Dkt. [42], is **GRANTED in part and DENIED in part**.

The motion is **granted** as to the claims against Centurion. Those claims are **dismissed without prejudice**. The **Clerk shall terminate** Centurion as a defendant on the docket.

The motion is **denied** as to Kelly's claims against Dr. Carter and NP Williams. Further, under Rule 56(f)(1), the Court gives the defendants notice of its intent to grant summary judgment in Kelly's favor on the issue of exhaustion. The Defendants have **through Friday, December 29, 2023,** to show cause why summary judgment should not be granted. Alternatively, the Defendants may withdraw their affirmative defense by this date.

**SO ORDERED.**

Date: 12/11/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Richard Kelly, #860033
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
New Castle, Indiana  47362

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Travel W. Montgomery
BLEEKE DILLON CRANDALL, P.C.
travis@bleekedilloncrandall.com

Eric Ryan Shouse
LEWIS and WILKINS LLP
shouse@lewisandwilkins.com