UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RICHARD KELLY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:22-cv-01256-TWP-MJD |
| KATE WILKS, INDIANA DEPARTMENT OF CORRECTION, KRISTEN DAUS, KELLY WILLIAMS, JASON CARTER, RILEY, Ms., | ) ) ) ) ) ) ) |
| Defendants. | ) |

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

This matter is before the Court on Plaintiff Richard Kelly's ("Mr. Kelly") Motion for a Temporary Restraining Order and Preliminary Injunction, seeking follow-up care with a specialist for his chest pain. (Dkt. 55.) Mr. Kelly, who is incarcerated at New Castle Correctional Facility, alleges in this lawsuit that his medical providers exhibited deliberate indifference to his complaints of pain and need for cataract treatment, among other things. *See* Dkts. 29, 61. He seeks a temporary restraining order directing an offsite visit with a specialist, and for Dr. Dennis Lewton to provide him with cataract surgery and a preliminary injunction to ensure that he receives proper medical care. (Dkt. 56). The Defendants, Kate Wilks, MD; Jason Carter, MD; Kelly Williams, NP; and Stephanie Riley, MD (collectively, the "Medical Defendants") have opposed the motion, (Dkt. 70), and Mr. Kelly did not reply. For the following reasons, the motion is **denied**.

**I. PRELIMINARY INJUNCTION STANDARD**

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). To obtain a preliminary injunction a plaintiff first must show that: "(1) without this relief, [he] will

suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) [he] has some likelihood of prevailing on the merits of [his] claims." *Speech First, Inc. v. Killen*, 968 F.3d 628, 637 (7th Cir. 2020). If the plaintiff meets these threshold requirements, "the court then must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Id.* "[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490. 501 (7th Cir. 2020) (cleaned up).

The standards that apply to preliminary injunction orders also apply to temporary restraining orders. *Loveless v. Chi. Bd. of Election Comm'rs*, 2004 U.S. Dist. LEXIS 18832, at *6 (N.D. Ill. Sep. 8, 2004). To obtain a temporary restraining order, the moving party has the burden of showing that "it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that issuing an injunction is in the public interest." *Grace Schs. v. Burwell*, 801 F.3d 788, 795 (7th Cir. 2015). The greater the likelihood of success, the less harm the moving party needs to show to obtain an injunction, and vice versa. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). A temporary restraining order "'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)); see also *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984) (granting preliminary injunctive relief is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it").

## II.  DISCUSSION

As explained below, Mr. Kelly cannot obtain a temporary restraining order or injunctive relief in the form of an order directing that he receives cataract surgery or specialist treatment for his chest pain.

**A.     Factual Background**

On January 20, 2022, Mr. Kelly was transported to the emergency room of a local hospital for complaints of chest pain. (Dkt. 70-1 at 2.)  A computer tomography scan ("CT scan") revealed an aortic aneurysm measuring 4.1 cm in diameter. *Id.*  Because the aneurysm measured less than 5.5 cm, surgical and cardiological consultations were not medically needed. *Id.* Nevertheless, medical provider Dianna Johnson referred Mr. Kelly for off-site testing to map and measure the aneurysm. *Id.* When Mr. Kelly again reported chest pain on March 16, 2022, medical staff assessed his condition and performed an electrocardiogram ("EKG"), which revealed a normal sinus rhythm. *Id.* at 12-14.  Mr. Kelly admitted that he had not been taking his blood pressure medication. *Id.* at 14.  Mr. Kelly again experienced chest pain on March 25. *Id.* at 15-18.  Again, his EKG was normal, and his blood pressure was elevated because he had been refusing his medication.[1] *Id.*

On April 8, 2022, Ms. Johnson requested follow-up off-site consultations for Mr. Kelly to see a cardiologist and thoracic surgeon. *Id.* at 19-24.  The referral paperwork notes Mr. Kelly's continuing refusal to take his blood pressure medication, among other things. *Id.* at 20, 23. Ms.

---

[1] Mr. Kelly broadly alleges that he experienced severe chest pains throughout 2023, that an EKG was performed each time he reported chest pain, that each EKG resulted in "abnormal findings," but that Dr. Carter instructed staff to destroy the EKG results and make no formal record of the results in Mr. Kelly's medical records. (Dkt. 55, ¶ 6.) But Mr. Kelly provides no details regarding the alleged "abnormalities" and does not indicate how he learned of Dr. Carter's alleged instruction to destroy medical records.  And, by not submitting a reply in support of his motion, he has not refuted the accuracy of the medical records that the Medical Defendants have presented.

Johnson renewed her referral requests on May 31, 2022. *Id.* at 25-30. And a three-month follow-up cardiology visit was requested in October 2022. *Id.* at 31-33.

At Mr. Kelly's January 2023 Chronic Care Clinic visit, he was prescribed lisinopril to help control his blood pressure. *Id.* at 36. During the visit, Mr. Kelly informed Dr. Carter that outside thoracic surgery specialist Dr. Carlos had requested updated imaging of the aortic aneurysm during their most recent off-site visit. *Id*. Dr. Carter requested approval for an off-site chest CT scan with contrast, reporting Mr. Kelly's history of "4.1 cm [aortic aneurysm monitored by [cardiovascular] surgery" and explaining that the specialist "just saw patient and would like to have his yearly chest CT with contrast." *Id.* at 38-39.

Mr. Kelly had a chest CT on February 20, 2023, which revealed his "dilated ascending thoracic aorta is unchanged, measuring up to 4.4 cm in diameter." *Id.* at 44-45. Guidelines for frequency of monitoring aortic aneurysms suggest yearly imaging examinations for aneurysms with a diameter of 3.5 to 4.4 cm, like Mr. Kelly's. *See* Dkt. 70-2 at 3. Given that Mr. Kelly's aneurysm remained stable and was no larger than 4.4 cm as of February 2023, no further monitoring would have been necessary until February 2024. Further, regardless of size, elective aneurysm repair through surgery presents risks, and surgical intervention is only indicated for patients expected to have a long-term benefit outweighing the risks. *Id.* at 3. An aneurysm less than 5.5 cm in diameter presents a less than 1% risk of rupture. *Id*.

**B.    Chest Pain Claim**

As explained below, Mr. Kelly has not satisfied the threshold elements to support his request for injunctive relief on his claim that his medical providers have failed to treat his chest pain.

1. **<u>Likelihood of Success on the Merits</u>**

First, party seeking injunctive relief must show a likelihood of success on the merits of his claim. "A movant's showing of likelihood of success on the merits must be strong." *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020) (quotation marks omitted). A "better than negligible" likelihood of success is not enough. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762−63 (7th Cir. 2020). "A 'strong' showing ... does not mean proof by a preponderance .... But it normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.*

Mr. Kelly's claim that he has been denied care for chest pain is brought under the Eight Amendment, which provides that prison officials must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). However, "not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" *Eagan v. Dempsey*, 987 F.3d 667, 688 (7th Cir. 2021) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). "'To determine if the Eighth Amendment has been violated in the prison medical context, we perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition.'" *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021) (quoting *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc)).

The Court assumes for purposes of the motion for a preliminary injunction that Mr. Kelly's aortic aneurysm is a serious medical need. But Mr. Kelly has not shown a likelihood of success on the merits of the second element of deliberate indifference: that his medical providers "either act[ed] or fail[ed] to act in disregard of that risk." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations and citations omitted). To demonstrate this

element, Mr. Kelly must show that the Medical Defendants made a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)). *See also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Here, it is currently undisputed that Mr. Kelly's medical providers responded to his complaints of chest pain, providing on-site and off-site testing. It is also undisputed that, while Mr. Kelly does have an aneurysm, he undergoes annual testing for this condition and his medical providers have concluded that it is not yet time for surgical intervention, which carries its own risks. Thus, there is no evidence that the Medical Defendants have failed to act in response to the risk that the aneurysm poses to Mr. Kelly or that they have made decisions regarding this condition that is a substantial departure from accepted professional judgment. Therefore, Mr. Kelly has failed to show a likelihood of success on the merits of this claim.

### 2.     Irreparable Harm and Inadequate Legal Remedies

Mr. Kelly has also failed to show that he will suffer irreparable harm or that his legal remedies are inadequate. Irreparable harm is "harm that 'cannot be repaired' and for which money compensation is inadequate." *Orr*, 953 F.3d at 502 (quoting *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997)). Mr. Kelly must show "that he will *likely* suffer irreparable harm absent obtaining preliminary injunctive relief." *Id.* (cleaned up) (emphasis in original). Similarly, to show that his legal remedies are inadequate, he must show "that any award would be seriously deficient as compared to the harm suffered." *Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1046 (7th Cir. 2017).

Here, because the medical evidence demonstrates that Mr. Kelly's aortic aneurysm presents no immediate risk of imminent harm and that surgical intervention is not currently medically indicated, there is no irreparable harm requiring preliminary injunctive relief. For the same reasons, Mr. Kelly has not shown that his legal remedies would be inadequate.

**C.     Cataract Claim**

The Court will not address the three threshold elements required for injunctive relief on Mr. Kelly's request for cataract surgery because a request for injunctive relief must necessarily be tied to the specific claims on which the plaintiff is proceeding. *See Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018) ("[T]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." (cleaned up)); *see also DeBeers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) ("A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally."). While Mr. Kelly initially stated a claim against Centurion Health of Indiana, LLC for maintaining a policy that resulted in the denial of treatment for his cataract, (Dkt. 29 at 3-4), this claim was dismissed based on Mr. Kelly's failure to exhaust his available administrative remedies, (Dkt. 57, 58). Because this claim is not proceeding, Mr. Kelly cannot obtain injunctive relief on it in this case. *See Maddox v. Wexford Health Sources, Inc.*, 528 F. App'x 669, 672 (7th Cir. 2013) ("An injunction, like any 'enforcement action,' may be entered only against a litigant, that is, a party that has been served and is under the jurisdiction of the district court") (quoting *Lake Shore Asset Mgmt., Ltd. v. Commodity Futures Trading Comm'n*, 511 F.3d 762, 767 (7th Cir. 2007)); *Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir. 2015) (holding that absent a nexus between underlying claims and request for injunctive relief, district court has no authority to grant injunctive relief) (citing *DeBeers Consol. Mines*, 325 U.S. at 220).

### III.  CONCLUSION

For the reasons explained above, Plaintiff Richard Kelly's motion for a temporary restraining order and preliminary injunction, Dkt. [55], is **DENIED**.

**SO ORDERED.**

Date:  7/1/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Richard Kelly, #860033
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
New Castle, Indiana  47362

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Travis W. Montgomery
BLEEKE DILLON CRANDALL, P.C.
travis@bleekedilloncrandall.com

Eric Ryan Shouse
LEWIS and WILKINS LLP
shouse@lewisandwilkinis.com